STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1041

LINDA G. LEBLANC

VERSUS

BRODY M. BOUZON, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2013-1355
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.

AFFIRMED.

**John M. Jefcoat**
**Cameron S. Snowden**
**Galloway Jefcoat, L.L.P.**
**Post Office Box 61550**
**Lafayette, Louisiana  70596-1550**
**(337) 984-8020**
**Counsel for Plaintiff/Appellant:**
  **Linda G. LeBlanc**

**Edward O. Taulbee, IV**
**Taulbee & Associates, LLC**
**Post Office Box 2038**
**Lafayette, Louisiana  70502-2038**
**(337) 269-5005**
**Counsel for Defendants/Appellees:**
  **Louisiana Farm Bureau Casualty Insurance Company**
  **Abbie Norris**

**KEATY, Judge.**

Plaintiff, Linda Leblanc, appeals the trial court's granting of summary judgment in favor of Defendants, Abbie Norris and Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau). For the following reasons, the trial court's judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

The instant matter arises out of a three-car automobile collision occurring on March 16, 2012, in Lafayette. Specifically, Linda Leblanc, Abbie Norris, and Brody Bouzon were driving their vehicles in the right lane on Johnson Street, which was congested with stop-and-go traffic. Leblanc stopped at a red light near the intersection of Johnson Street and Churchill Drive. Norris, who was travelling behind Leblanc, also stopped. Bouzon, who was following behind Norris and Leblanc, failed to stop. Consequently, he rear-ended Norris's vehicle, pushing it into the rear of Leblanc's vehicle. Bouzon was issued a citation for careless operation.

As a result, Leblanc filed suit against the following: Bouzon and his automobile liability insurer, USAgencies Casualty Insurance Company, Inc.; Norris and her automobile liability insurer, Farm Bureau; and State Farm Mutual Automobile Insurance Company, Leblanc's automobile insurer. In her petition, Leblanc claimed that she sustained physical pain and mental anguish arising from Bouzon's and Norris's negligence and sought reimbursement of medical special damages and/or lost wages. After witness depositions were completed, Norris and Farm Bureau filed a motion for summary judgment on her liability, alleging that there were no disputed material facts due to the following: Bouzon failed to safely operate his vehicle; Bouzon failed to keep a proper lookout; Bouzon was afforded

the presumption of negligence as he was the following driver; and Bouzon cannot submit evidence to rebut such presumption. After a hearing on June 30, 2014, the trial court orally granted Norris's and Farm Bureau's motion for summary judgment on the issue of liability, dismissing them with prejudice. This oral ruling was confirmed by the trial court's written judgment dated July 18, 2014.

Leblanc appeals this written judgment and assigns one assignment of error. She alleges that the trial court erred in granting Defendants' motion for summary judgment as there remained general issues of material fact.

## STANDARD OF REVIEW

When reviewing a trial court's judgment on a motion for summary judgment, an appellate court employs the de novo standard of review "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. The burden of proof remains with the movant. La.Code Civ.P. art. 966(C)(2). If the moving party, however, will not bear the burden of proof at trial and shows that "factual support for one or more elements essential to the adverse party's claim, action, or defense" is lacking then the non-moving party must produce "factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial[.]" *Id*. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. *Id*. The motion for summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue

as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

## LAW

We must analyze the substantive law governing the instant matter to determine whether a fact is material. *Jagneaux v. Lafayette City-Parish Consol. Gov't Parks & Recreation*, 13-768 (La.App. 3 Cir. 12/11/13), 128 So.3d 681. Louisiana has enacted laws that set forth duties imposed on drivers of following vehicles. Specifically, La.R.S. 32:81(A) provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." A following motorist involved in a rear-end collision, therefore, is presumed to have breached this statutory duty. *Garcia v. Stalsby*, 11-350 (La.App. 3 Cir. 12/14/11), 78 So.3d 873, *writ denied*, 12-422 (La. 4/9/12), 85 So.3d 703. The following motorist can rebut this presumption "by demonstrating that he or she had his car under control, closely observed the preceding vehicle, and followed at a safe distance under the circumstances[.]" *Id.* at 877. The following motorist can also rebut this presumption pursuant to the sudden emergency doctrine "by *proving that the driver of the lead car negligently created a hazard which the following motorist could not reasonably avoid.*" *Id.* (alterations in original). The sudden emergency doctrine cannot be used by one who fails to use due care in avoiding the emergency and does not lower the standard of care required of motorists before the emergency occurs. *Ebarb v. Matlock*, 46,243 (La.App. 2 Cir. 5/18/11), 69 So.3d 516, *writ denied*, 11-1272 (La. 9/23/11). The burden of proof remains with the following motorist who must prove that he was not negligent. *Garcia*, 78 So.3d 873.

3

In *Graffia v. Louisiana Farm Bureau Casualty Insurance Co.*, 08-1480, p. 7 (La.App. 1 Cir. 2/13/09), 6 So.3d 270, 274, a case cited by Leblanc, the first circuit held:

> [A] legal presumption does exist that a following motorist who collides into the rear end of a leading automobile is at fault. *Matherne v. Lorraine*, 03-2369 (La.App. 1 Cir. 9/17/04), 888 So.2d 244, 246. The following motorist must exonerate himself or herself from fault before he or she can completely avoid liability. *Id.* However, notwithstanding the presumption of negligence, a favored motorist can still be assessed with comparative fault if his or her substandard conduct contributed to the cause of the accident. *Id.* "[O]nce the presumption of negligence attaches to the defendant, the ordinary rules of comparative negligence apply and, thus, a plaintiff's damage award may be reduced by the degree that he was comparatively at fault." *Id.*

**DISCUSSION**

In her only assignment of error, Leblanc alleges that the trial court erred in granting Defendants' motion for summary judgment. In support, Leblanc contends that some of the fault attributed to Bouzon may be transferred to Norris. Leblanc points to Defendants' argument wherein they allege that it is undisputed that Norris's vehicle was stopped when Bouzon struck her from behind, suggesting that only one collision occurred between Norris and Leblanc. Leblanc contends, however, that this fact is disputed as evidence shows that Norris's vehicle struck Leblanc's vehicle twice: once before and once after the collision between Bouzon and Norris. This first collision occurred, according to Leblanc, when the traffic light turned green, prompting Norris to let off of her brakes, accelerate, and collide into the back of Leblanc's vehicle. The second collision then occurred when Norris's vehicle was pushed into Leblanc's vehicle, after Norris was rear-ended by Bouzon. Leblanc alleges that this disputed issue of material fact is grounds for reversing the trial court's judgment.

4

In opposition, Defendants contend that there is no evidence showing that Norris hit Leblanc's vehicle twice. Defendants also cite *Ebarb*, 69 So.3d 516, a case involving a three-car collision. In *Ebarb*, Yolanda Ebarb was driving up an overpass when she noticed stalled traffic, prompting her to stop her vehicle. David Terry, who was travelling behind Ebarb, subsequently stopped behind Ebarb. Phillip Matlock, who was travelling behind Terry, failed to stop and rear-ended Terry, causing Terry's vehicle to collide into the back of Ebarb's vehicle. As a result, Ebarb filed suit against Terry and Matlock. Thereafter, Terry filed a motion for summary judgment on his own behalf, denying liability. The trial court granted the motion, and Ebarb did not appeal this judgment. Ebarb then filed a partial motion for summary judgment on the issue of liability against Matlock, which was subsequently granted by the trial court. Matlock appealed, arguing that summary judgment was inappropriate. In affirming the trial court's judgment, the second circuit referenced the general rule that "where other vehicles are able to stop behind the lead vehicle, the driver of the last vehicle that precipitates the chain reaction collision is negligent." *Id*. at 521. The second circuit noted that, although both Ebarb and Terry were confronted with stalled traffic, they stopped their vehicles at a safe distance behind the preceding vehicles, establishing the reasonable standard of care under the circumstances. The second circuit further held that because Ebarb and Terry stopped their vehicles and avoided a collision, the circumstances failed to give rise to a sudden emergency.

We agree with Defendants in that *Ebarb* is factually similar to the instant case. Specifically, both cases involve a three-car, rear-end collision, and both cases involve a motion for summary judgment based upon the presumption of liability afforded to a rear-end motorist. In the instant case, the trial court's

5

reasoning also parallels the second circuit's reasoning in *Ebarab* regarding the presumption of liability when it granted the motion for summary judgment by orally stating: "Mr. Bouzon's testimony clearly indicates that he hit Norris and pushed Norris into the car in front. There does not appear to be any genuine issue of material fact that remains in dispute."

We will review the deposition testimony and evidence attached to both Leblanc's opposition memorandum and Defendants' motions for summary judgment to determine whether the trial court erred. In that regard, Norris testified that "[t]raffic was pretty heavy" prior to the collision. She testified that, prior to being struck from behind, she "came to a complete stop, far enough that I could see [Leblanc's] tires in front of me." Norris testified that while she was stopped, she noticed Bouzon's vehicle approaching her from behind. She testified that when she realized Bouzon's vehicle was not going to stop, she "held on to my wheel and put both feet on my brakes and that's when he hit me." In her written statement given to Officer Glenn Landry after the collision, she stated that Bouzon hit her from behind and pushed her vehicle into the car in front of her.

Bouzon testified that prior to the accident, he was driving on Johnson Street where the traffic was "heavy" and was "stop-and-go." He testified that he stopped behind Norris's vehicle, which was stopped at a red light. His testimony conflicted as to whether the light was red or green at the time of the impact between his and Norris's vehicles. Regardless, he testified that, as he was "looking around," he noticed that Norris's brake lights "went off." Bouzon testified that as he let off of his brakes, Norris slammed on her brakes. As a result, he hit Norris's vehicle from behind, pushing her vehicle into the back of Leblanc's vehicle. Bouzon testified that if the light was red at the time of impact, Norris must have been "filling in

6

space" between her vehicle and Leblanc's vehicle, which would explain why Norris allegedly let off of and then slammed on her brakes. Bouzon testified he was uncertain as to whether Norris struck Leblanc prior to him striking Norris because he never actually saw Norris's vehicle hit Leblanc's vehicle. After the collision, Bouzon testified that Norris's vehicle "had a little crack in her back bumper" and that her front bumper "wasn't too bad." He further testified that Leblanc's vehicle was not damaged "too much." Bouzon testified that he was issued a citation for "[c]areless operation, with a wreck."

Bouzon also provided a statement to Officer Landry after the accident, indicating that since he thought the cars were taking off, he ran into the silver car in front of him. Bouzon further provided a recorded statement to a representative of USAgencies on March 30, 2012, stating:

> [W]e were stopped at a red light. Traffic was backed up, and when I had looked up, uh, I saw the car was moving up, I guess to just fill in space so cars can move up. But I thought they was taking off for the green light and I press the gas and I...I rear-ended one vehicle and pushed the other, the vehicle I rear-ended into another vehicle.

In this recorded statement, Bouzon failed to state that Norris suddenly stopped as he did in his deposition testimony. In this recorded conversation, however, he admitted that he was at fault for causing the collision.

Officer Landry, the investigating officer, testified that based upon the verbal statements he obtained at the scene, he believed that both Leblanc and Norris were stopped at the time Bouzon collided with the back of Norris's vehicle. Officer Landry testified that, as a result, he issued Bouzon a citation. Officer Landry further testified that he believed neither Norris nor Leblanc were at fault.

There is no evidence showing that Norris hit Leblanc's vehicle prior to Norris's vehicle being struck by Bouzon's vehicle. On the contrary, the testimony

from Bouzon, Norris, and Officer Landry supports a finding that Norris was at a complete stop prior to being struck from behind by Bouzon. Since Norris was stopped, Bouzon is presumed liable as the rear-ending motorist who caused the collision and subsequent chain reaction.

In order to rebut the objective evidence that Leblanc and Norris were able to safely stop and avoid a collision, Bouzon must show that he had his vehicle under control, closely observed the lead vehicle, and followed at a safe distance prior to rear-ending Norris's vehicle. *Ebarb*, 69 So.3d 516. The testimony and evidence contained in the record show that Bouzon would not be able to rebut this presumption.

Moreover, Bouzon cannot escape liability by invoking the sudden emergency doctrine. As discussed above, the second circuit in *Ebarb* held that since Ebarb and Terry were able to stop their vehicles and avoid a collision when confronted with stalled traffic, the sudden emergency doctrine was inapplicable to the following driver, Matlock. In the instant case, similar to *Ebarb*, Leblanc and Norris stopped their vehicles and avoided a collision despite the heavy traffic. As such, and supported by *Ebarb*, the circumstances do not allow for the use of the sudden emergency doctrine.

Accordingly, this assignment of error is without merit, and the trial court's judgment is affirmed.

## DECREE

The trial court's judgment is affirmed. All costs of this appeal are assessed to Plaintiff, Linda Leblanc.

**AFFIRMED.**